

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:11-CR-48 |
| | ) | |
| STEVEN LAWRENCE HAWKINS, | ) | |
| a/k/a "Hawk" | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, STEVEN LAWRENCE HAWKINS, a/k/a "Hawk", agree that at trial the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence.

1. On or about August 7, 2009, the defendant met with law enforcement agents acting in an undercover capacity to purchase 26 cartons of untaxed cigarettes for $500. At the conclusion of their transaction, the defendant offered to sell the undercover agents narcotics and firearms.

2. On or about March 15, 2010, the defendant contacted the undercover agents to ask if they were still selling the untaxed cigarettes, and the agents said that they did have cigarettes available for sale. During this same conversation, the defendant told the undercover agents that he could acquire heroin if the agents were interested. The agents said they were interested, and the two parties agreed to meet.

3. On or about March 19, 2010, the defendant met with the undercover agents at the

1

Sunoco gas station at 8011 Ravensworth Road, in Springfield, Virginia, within the Eastern District of Virginia. At this time, the defendant sold the undercover agents 9.8 grams of heroin for $1,250.00, and the defendant purchased 10 cartons of untaxed cigarettes or $250.00, which he subtracted from the total price of the heroin.

4. On or about March 30, 2010, the defendant met with undercover agents at the Springfield Mall, in Springfield, Virginia. At this time, the defendant sold the undercover agents 19.8 grams of heroin for $2,000.00, and purchased 20 cartons of untaxed cigarettes for $500.00, which he subtracted from the price of the heroin.

5. On or about April 14, 2010, the defendant met with undercover agents at the Ravensworth Shopping Center, in Springfield, Virginia. At this time, the defendant sold the undercover agents 28.4 grams of heroin for $2,660.00, and purchased 16 cartons of untaxed cigarettes. During this transaction, the defendant told the undercover agents that he could arrange a meeting with his heroin supplier, to discuss the possibility of doing business for larger quantities of heroin.

6. On or about April 25, 2010, the defendant contacted the undercover agents to arrange for the sale of heroin and the purchase of untaxed cigarettes. During this conversation, the defendant stated that he could arrange to bring his supplier to the meeting.

7. On or about April 28, 2010, the defendant and his heroin supplier, Charles Eric Dixson, met with the undercover agents at Kilroy's restaurant at 5250 Port Royal Road, in Springfield, Virginia. During this meeting, Dixson told agents that he could begin selling the undercover agents heroin for $95.00 per gram, with the possibility of lowering the price again, if the agents agreed to continue purchasing from them on a regular basis. Dixson further explained

that the defendant would take a cut of the proceeds for transporting the heroin to Virginia from Maryland.

8. At this same meeting, on or about April 28, 2010, the undercover agents gave the defendant $2,650.00 to purchase a quantity of heroin. Upon receiving the cash, the defendant handed the money to Dixson and left the restaurant with one of the undercover agents to finish the deal. Once outside the restaurant, the defendant retrieved the heroin from a vehicle and handed approximately 28 grams of heroin to the undercover agent. At this time, the defendant purchased 14 cartons of untaxed cigarettes, which he agreed to pay for at a later date.

9. On or about May 12, 2010, at the Kings Park Shopping Center in Springfield, Virginia, the defendant sold undercover agents 13.8 grams of heroin for $1,000.00, subtracting the total that the defendant owed the undercover agents from the previous deal. At this time, the undercover agent asked if the defendant could sell a firearm, as they had previously discussed.

10. On or about July 27, 2010, at the Ravensworth Shopping Center in Springfield, Virginia, the defendant sold undercover agents 13.7 grams of heroin for $1,140.00, and purchased eight cartons of untaxed cigarettes for $200.00, subtracting that amount from the total price of the heroin.

11. On or about September 8, 2010, at a Popeye's restaurant, located at 6418 B Springfield Plaza, in Springfield, Virginia, the defendant sold undercover agents 28.1 grams of heroin for $2,660.00. At this same time, the defendant purchased four cartons of untaxed ciagrettes for $100.00. The defendant attended this transaction with his supplier, Dixson, and the defendant told the undercover agents that they would not be able to accompany the agents to a local bar because they had some additional heroin-related business to attend to at that time.

12. On or about September 30, 2010, at the same Popeye's restaurant in Springfield, Virginia, the defendant sold undercover agents 13.8 grams of heroin and an Israeli Desert Eagle, .44 caliber semi-automatic pistol, loaded with seven rounds of ammunition for $2,130.00. Both the firearm and heroin were transferred to the undercover agents at the same time. During this meeting, the defendant purchased eight cartons of untaxed cigarettes for $200.00, subtracting that amount from the total price of the heroin. Additionally during this transaction, the defendant told the undercover agents that his supplier, Dixson, went to New York after their last meeting, to purchase a quantity of heroin.

13. On or about November 2, 2010, at the same Popeye's restaurant in Springfield, Virginia, the defendant sold undercover agents 89.5 grams of heroin for $8,550.00, and purchased ten cartons of untaxed cigarettes for $250.00, subtracting that amount from the total price of the heroin.

14. On or about December 1, 2010, at Kilroy's restaurant in Springfield, Virginia, the defendant sold undercover agents 27.8 grams of heroin for $2,460.00, and purchased eight cartons of untaxed cigarettes for $200.00, subtracting that amount from the total price of the heroin.

15. At this same transaction, on or about December 1, 2010, the defendant was accompanied by his supplier, Dixson, who spoke with the undercover agents and arranged for a future heroin transaction, that would take place through the defendant.

16. In total, the defendant and his supplier, Dixson, conspired and sold approximately 272.7 grams of heroin to the undercover agents.

17. This statement of facts includes those facts necessary to support the plea

agreement between the defendant and the government. It does not include each and every fact known to the defendant or the government, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

18. The actions of the defendant as recounted above were in all respects knowing, deliberate and wilful, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: _____
Philip Sam Kaplan
Special Assistant United States Attorney

Defendant's Stipulation and Signature

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, STEVEN LAWRENCE HAWKINS, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
STEVEN LAWRENCE HAWKINS
Defendant

Defense Counsel's Signature

I am STEVEN LAWRENCE HAWKINS' attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Jonathan A. Simms, Esq.
Attorney for STEVEN LAWRENCE HAWKINS