IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
)
)
v. ) 1:11cr48(LMB)
) 1:12cv748(LMB)
)
STEVEN LAWRENCE HAWKINS, )
)
Defendant. )

MEMORANDUM OPINION

Before the Court is Steven Lawrence Hawkins' ("Hawkins" or "movant") pro se Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), in which he argues that he received constitutionally ineffective assistance of counsel from his retained and appointed attorneys and that the Court made an error of law. Because Hawkins' § 2255 Motion lacks merit on its face, no response from the Government is required, and the § 2255 Motion will be summarily dismissed.[1]

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

I.  BACKGROUND

On January 26, 2011, Hawkins was indicted under 21 U.S.C. § 846 for conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) (Count I) and for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count II). On March 2, 2011, Hawkins retained Jonathan Simms ("Simms") as counsel in place of William Todd Watson ("Watson") from the Office of the Federal Public Defender ("FPD"), who had represented Hawkins since his initial appearance before the magistrate judge on December 2, 2010.

On April 13, 2011, the Government filed a Notice pursuant to 21 U.S.C. § 851 that Hawkins "faces enhanced punishment under" 21 U.S.C. §§ 841 and 846 because "he was previously found guilty" of felony cocaine distribution in violation of Maryland law. See Dkt. No. 31 (Information to Establish Prior Conviction).[2] On April 15, 2011, Hawkins entered into a plea agreement with the Government in which he pleaded guilty to Count I of the indictment and the Government dismissed Count II, which carried a five-year mandatory minimum sentence to run consecutive to any sentence on Count I.

---

[2] The Government appended to its Notice a certified Amended Commitment Record, showing that after originally receiving a sentence of 25 years imprisonment, Hawkins was re-sentenced to a total of 20 years imprisonment with six years suspended. See Dkt. No. 31-1.

Five weeks after the plea hearing, Hawkins terminated Simms' representation and requested appointment of new counsel. See Dkt. Nos. 38, 39. Granting the request, the Court re-appointed the FPD, and Watson and Kathryn Mims thereafter represented Hawkins at the sentencing hearing. On July 8, 2011, Hawkins was sentenced to 120 months incarceration on Count I followed by eight years of supervised release. Under the terms of his plea agreement, Hawkins waived his right to appeal his conviction and any sentence that did not exceed the statutory maximum and, in fact, did not appeal his conviction or sentence on Count I. Hawkins has timely filed his pro se § 2255 Motion accompanied by a request to proceed in forma pauperis.[3]

## II.   DISCUSSION

In his § 2255 Motion, Hawkins alleges constitutionally ineffective assistance of counsel in connection with the plea hearing and his sentencing. See § 2255 Mot. at 5-6. Hawkins also alleges that the Court "erred in failing to conduct colloquy required under 21 U.S.C. § 851(b)." Id. at 8.

---

[3] The § 2255 Motion was docketed on July 10, 2012 but was filed by Hawkins on July 5, 2012, the day he placed it in the prison mail system. See Fed. R. App. P. 4(c); Houston v. Lack, 487 U.S. 266, 270-71 (1988). With respect to the in forma pauperis application, Hawkins has made the requisite showing, and the application will be granted by the Order to accompany this Memorandum Opinion.

A. **Standard of Review**

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967). Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result [] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that were not appealed are deemed waived and, therefore, procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994)(applying standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel,

4

which can be raised in a collateral challenge. See <u>United States v. Martinez</u>, 136 F.3d 972, 979 (4th Cir. 1998); <u>United States v. DeFusco</u>, 949 F.2d 114, 120-21 (4th Cir. 1991).

### B. Ineffective Assistance of Counsel

To sustain his § 2255 Motion based on ineffective assistance of counsel, Hawkins must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the defendant. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. Even were counsel's performance unreasonable, to prevail, a movant must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

#### 1. <u>Simms</u>

Hawkins argues that Simms was constitutionally ineffective because he did not file any pretrial motions, including a motion for bond, and because he failed to investigate possible defenses, obtain the chemist reports, discuss the difference

between a jury and bench trial, and explain the plea agreement fully. See § 2255 Mot. at 5.

Other than a request for bond, Hawkins does not identify any particular motion that he believes Simms should have filed on his behalf. Likewise, Hawkins offers no argument as to how any particular pretrial motion would have affected the outcome of his case. As such, the § 2255 Motion establishes neither deficient performance nor prejudice as to motions practice.

Similarly, Hawkins fails to identify any meritorious defenses that were left unraised or what "chemist reports" Simms neglected to obtain.[4] These deficiencies in the § 2255 Motion are particularly fatal given the specificity of the factual allegations to which defendant pled guilty:

> THE COURT: [I]t says here in paragraph 3 that four days later, which is March 19, you met the undercover agents at a Sunoco gas station on Ravensworth Road in Springfield, . . . and at that time, you sold the agents 9.8 grams of heroin for $1,250, and you also purchased ten cartons of untaxed cigarettes for $250, which you subtracted from the total price of the heroin. Is that correct?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: All right. And then it says a few days later, on March 30, 2010, you again met with the undercover agents, this time at Springfield Mall, and

---

[4] With respect to chemist reports, the Government filed a Rule 16 Notice identifying as a trial witness Dr. Shawn M. Carter, the forensic chemist employed in the Mid-Atlantic Laboratory of the United States Department of Justice's Drug Enforcement Administration who analyzed the controlled substances that the Government purchased from Hawkins in several controlled buys. See Dkt. No. 29. The Government appended Carter's laboratory report to its Notice.

6

> you sold the agents 19.8 grams of heroin for $2,000, and you also purchased 20 cartons of untaxed cigarettes for $500, which you subtracted from the price of the heroin. Is that correct?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: All right. And then there lists a series of other meetings between you and the agents involving sales of heroin. Is that correct?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: All right. And it also indicates in paragraph 12 that on or about September 30, 2010, . . . you sold the undercover agents 13.8 grams of heroin and an Israeli Desert Eagle .44 caliber semiautomatic pistol that was loaded with seven rounds of ammunition for $2,130. Is that correct?
> THE DEFENDANT: Yes, ma'am.

Tr., Apr. 15, 2011 (Dkt. No. 45) at 26:20-27:22.

Defendant also admitted to facts regarding the scope of the conspiracy:

> THE COURT: And do you agree that either you yourself or [co-defendant] Dixson sold at least 100 grams of heroin during the course of this conspiracy?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Do you understand if the Court accepts your guilty plea today, there'll be no further trial of the issue, and you will be found guilty?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Do you claim in any respect that you are innocent of this conspiracy charge?
> THE DEFENDANT: No, ma'am.

Id. at 29:19-30:4. To the extent Hawkins now claims he is innocent of the conduct charged in Count I, such an assertion directly contradicts his sworn statements during the plea colloquy and cannot be credited. See United States v. Lemaster, 403 F.3d 216, 220-23 (affirming summary dismissal of a § 2255 motion alleging ineffective assistance of counsel where

7

allegations are inconsistent with statements made during Rule 11 hearing).

The § 2255 Motion further alleges that Simms failed to review the plea agreement with Hawkins. Again, this claim is directly contracted by the Rule 11 colloquy. Namely, while under affirmation, Hawkins represented to the Court that Simms had reviewed the plea agreement in its entirety with him:

> THE COURT: Mr. Hawkins, we have in court this morning a written plea agreement, and the agreement itself is 13 pages long, and I see on page 13 with the date of April 13, which would have been on Wednesday, what appears to be your signature. Now, I may have the only signed copy, but do you remember, did you sign a written plea agreement on Wednesday?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Now, before you signed that plea agreement, did you read it over for yourself word for word?
> THE DEFENDANT: No, ma'am.
> THE COURT: All right. Mr. Simms, how did you go over the plea agreement with your client?
> MR. SIMMS: Your Honor, we met, we sat down, and we went over each paragraph.
> THE COURT: Did you read each paragraph to your client?
> MR. SIMMS: Yes, I did.
> THE COURT: All right. Is that correct, Mr. Hawkins, that Mr. Simms was reading it to you?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: All right. Now, as you went over this plea agreement paragraph by paragraph, would you stop from time to time and ask Mr. Simms questions about the plea agreement?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Did he answer all of your questions to your satisfaction?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Well, you sort of smiled at me. I mean, you may not like his answers, but the point is do you feel that he fully answered your questions?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: If not, you need to tell me, because this

>   is your day in court.
>   THE DEFENDANT: Yes, ma'am, he answered them.
>   THE COURT: Are you completely satisfied with the way he has worked for you?
>   THE DEFENDANT: Yes, ma'am.

Tr. at 4:7-5:17. He then represented that he had been considering the plea agreement "for some time" and had "carefully reviewed every part of it" with counsel:

>   THE COURT: Right above the line where your signature is are two sentences that I want you to look at carefully, and they go as follows: "I have read this plea agreement and carefully reviewed every part of it with my attorney." Do you see that?
>   THE DEFENDANT: Yes, ma'am.
>   THE COURT: Now, of course, you told me you haven't read the plea agreement entirely. I mean, did you at least read parts of it?
>   THE DEFENDANT: Yes, ma'am. Actually, they had a prior plea agreement to this, and I read that one. It's pretty much the same thing --
>   . . .
>   THE COURT: What changed between the original one and this one? Was it the statement of facts, or was it the plea agreement itself?
>   THE DEFENDANT: I believe it was both of them.
>   THE COURT: Both of them? All right. So you've had this plea agreement under consideration for some time; is that correct?
>   THE DEFENDANT: Yes, ma'am.
>   THE COURT: All right. Do you feel that you have reviewed all of this plea agreement with your attorney completely?
>   THE DEFENDANT: Yes, ma'am.
>   THE COURT: All right. Now, do you feel that you completely understand the agreement?
>   THE DEFENDANT: Yes, ma'am.

Id. at 5:21-6:25.

Finally, Hawkins alleges that Simms failed to explain his right to proceed to trial as well as the difference between a

9

jury and bench trial. This argument is impossible to credit given Hawkins' representations that he was satisfied with Simms and had no outstanding questions. See id. at 4:7-5:17; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1288 (4th Cir. 1992)(rejecting ineffective assistance claim where movant stated during Rule 11 hearing that "I am very pleased with my counsel"). Even assuming Simms failed to explain to Hawkins his rights, no prejudice exists in this case because the Court explicitly informed him about his trial rights and other constitutional and procedural protections he was waiving with his guilty plea. See Tr. at 22:6-24:11 (identifying trial rights and distinguishing between a jury trial and a bench trial).

Based on Hawkins' own statements, made under the penalty of perjury at his Rule 11 hearing, his ineffective assistance of counsel claims against Simms lack merit and will be dismissed.

2. Watson

Hawkins alleges that Watson provided ineffective assistance in connection with the sentencing hearing when he "failed to object to the 2 point enhancement for a firearm." § 2255 Mot. at 6. Although that enhancement was justified, it made no material difference to the sentence because Hawkins received a variant sentence of ten years incarceration, which was the statutory mandatory minimum, and was well below the guidelines range established in his case. Dkt. No. 59 (judgment); see Dkt. No. 56

(defendant's position on sentencing).[5] Given that Hawkins received the minimum sentence for which he was eligible, he fails to show how counsel's representation was unreasonable or that he was in any respect prejudiced by counsel's conduct.

### C. 21 U.S.C. § 851(b)

Hawkins' third and final allegation is that the Court "erred in failing to conduct colloquy required under 21 U.S.C. § 851(b)." § 2255 Mot. at 8.[6] When the Government files a Notice pursuant to § 851(a) to establish prior convictions and thereby secure an increase in the defendant's sentence, a court "shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him

---

[5] The Court explicitly warned Hawkins during the plea hearing that although the Government had agreed to move to dismiss Count II of the indictment, possession of a firearm could nevertheless be considered at sentencing:

> THE COURT: But I want to make sure you also understand that under the guidelines, there's usually a two-level increase to the offense level if a gun was involved in the crime, and paragraph 10 does not prevent the Probation Office or the Court from taking the gun into consideration in determining the proper guidelines. Do you understand that?
> THE DEFENDANT: Yes, ma'am.

Tr. At 16:17-23.

[6] Although the Court elected to address Hawkins' argument on its merits, because he failed to raise this issue on direct appeal, it has been procedurally defaulted.

11

that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."

However, "literal compliance with the Rule is not necessary if it is clear from the circumstances that the defendant does not contest the validity of his prior convictions." United States v. Hagler, 371 F. App'x 423, 426-27 (4th Cir. 2010) (finding lack of strict compliance with § 851(b) harmless where the Government's use of defendant's prior conviction was explained in detail at the plea hearing and defendant both knew about the enhancement and did not contest it). Therefore, the question when a district court does not strictly comply with § 851(b) is whether the error affected the defendant's "substantial rights." See United States v. Ellis, 326 F.3d 593, 598-99 (4th Cir. 2003)(rejecting defendant's challenge on direct appeal to his sentence where defense counsel admitted client's two prior felony convictions and defendant did not contest the convictions when given an opportunity to speak).

There is no question that Hawkins' understood the impact of the previous conviction given that it was expressly outlined in his plea agreement and was subsequently discussed at the plea hearing:

> THE COURT: [L]et's turn to page 1, paragraph 1. There it says you've agreed to plead guilty to Count 1 of the pending indictment, which charges you with being a

12

>member of a conspiracy to distribute 100 grams or more of heroin after having been previously convicted of a felony drug offense.
>Do you understand that that offense carries a mandatory minimum term of ten years of imprisonment, with a maximum possibility of life imprisonment? In addition, you could be required to pay a fine of up to $8 million; there's a $100 special assessment that's automatic, must be paid; and there's at least eight years of supervised release. Do you understand all of those provisions?
>THE DEFENDANT: Yes, ma'am.
>THE COURT: All right. Now, am I correct, was there an 851 filed in this case?
>MR. KAPLAN: Yes, Your Honor, there was an 851 filed.
>THE COURT: And that's why that doubled the mandatory minimum.
>MR. KAPLAN: That is correct, Your Honor.

Tr. at 8:18-9:11; see Dkt. No. 33 at 1 (plea agreement).

What is more, not only did the Presentence Investigation Report ("PSR") detail defendant's relevant prior conviction, his own Position on Sentencing acknowledged his previous felony conviction. See Dkt. Nos. 51 & 56; see also United States v. Houser, 147 F. App'x 357, 360 (4th Cir. 2005)(finding no violation of defendant's substantial rights where prior convictions were discussed in the PSR and defendant did not object to the validity of the convictions). Finally, as in Ellis, when afforded an opportunity to speak at his sentencing hearing, defendant did not challenge his prior felony conviction.

For all these reasons, Hawkins cannot credibly establish a basis for the § 2255 Motion.

### III. CONCLUSION

For the reasons stated above, Hawkins' § 2255 Motion will be summarily dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 17th day of August, 2012.

Alexandria, Virginia

/s/ _Leonie M. Brinkema_
Leonie M. Brinkema
United States District Judge